# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) 2: 09-cr-00325 |
| v. | ) |
| | ) |
| DAVID CURRAN, BRADLEY BARNDT, | ) |
| and FRANCO BADINI | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

Presently before the Court for disposition is the MOTION TO SUPPRESS WIRETAP AND ELECTRONIC INTERCEPTIONS filed by Defendant David Curran (Document No. 488) and joined by Defendants Franco Badini (Document No. 496) and Bradley Barndt (Document No. 510) and the MOTION TO SUPPRESS RECORDINGS OF ELECTRONIC SURVEILLANCE filed by Defendant Bradley Barndt (Document No. 362). The government, with the Court's permission, filed an Omnibus Response to all pretrial motions (Document No. 521), including a specific response to Defendants' motions to suppress wiretap and electronic interceptions.

A hearing on pretrial motions filed by Defendants was scheduled and conducted by the Court on April 13, 2011. Each of the named Defendants, with counsel, was present in person. After initial remarks of the Court and statements of counsel for the government and each defendant, it developed that the Court did not need to conduct an evidentiary hearing on the motions to suppress wiretap evidence. The motions challenge the sufficiency of the information contained within the four corners of the Applications and Affidavits and have been thoroughly briefed.

### The Investigation and Wiretap Intercepts

In January 2009, the Drug Enforcement Administration ("DEA") initiated an investigation into the drug trafficking organization allegedly led by Defendant David Curran ("Curran"). According to law enforcement, from January through May 2009, several informants had provided information which confirmed that Curran and several associates were trafficking in substantial quantities of cocaine in the Western Pennsylvania area and had been doing so for several years.

The government filed nine (9) applications for Title III wiretap intercepts on five telephones, four of which were being used by Curran. The initial wiretap was authorized by Judge Joy Flowers Conti on June 19, 2009, based on an Application from Assistant U.S. Attorney Craig W. Haller and a 52-page Affidavit from Detective Eric Harpster of the City of Pittsburgh Police Department, Weed and Seed Division, who is a federally deputized task force officer of the DEA. Judge Conti issued eight (8) subsequent Orders which authorized the continued interception of wire communications of Curran and others, based on followup Applications submitted by Assistant U.S. Attorney Craig W. Haller and Affidavits of Dominic J. Falascino, Task Force Officer for the DEA - Pittsburgh Office. Judge Conti issued the final Order authorizing wire intercepts on October 16, 2009. The Applications, Affidavits, and Court Orders have been provided to Defendants. (Miscellaneous Numbers 09-194 and 09-194(a) through 09-194(h).)

Defendants argue that the wiretap evidence should be suppressed because wiretaps were obtained in violation of 18 U.S.C. § 2518. In particular, Defendants argue that the Affidavits failed to satisfy the "necessity" requirement as they did not establish a sufficient factual predicate as to why other traditional, less-intrusive law enforcement techniques were not sufficient.

Defendants contend that the Affidavits contain only vague and conclusory allegations as to the events of this case. The government contends that its Applications and the underlying Affidavits properly complied with the requirements of the wiretap statute and that the Affidavits clearly reflect the investigative need for wiretap intercepts as normal investigative techniques appeared reasonably unlikely to succeed if tried.

## Legal Standard

Before issuing an order authorizing a wiretap, it is required that "the judge determine[] on the basis of the facts submitted by the applicant . . . that normal investigative procedures have been tried and have failed[,] or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c). The United States Court of Appeals for the Third Circuit has emphasized that the statutory requirement of necessity does not mandate that the government exhaust all other investigative procedures before resorting to electronic surveillance. *United States v. Williams*, 124 F.3d 411, 418 (3d Cir. 1997). Instead, to authorize a wiretap, it is sufficient if there is evidence that "normal investigative techniques . . . reasonably appear to be unlikely to succeed if tried." *Id.* (quoting 18 U.S.C. § 2518(3)(c)).

To make such a showing, "[t]he government need only show a 'factual predicate' sufficient to inform the [authorizing] judge why other methods of investigation are not sufficient." *United States v. McGlory*, 968 F.2d 309, 345 (3d Cir. 1992). In determining whether this requirement has been satisfied, a court "may properly take into account affirmations which are founded in part upon the experience of specially trained agents." *Williams*, 124 F.3d at 418. In this regard, "[t]he government's showing is to be 'tested in a practical and commonsense fashion.'" *McGlory,* 968 F.2d at 345 (quoting *United States v. Vento*, 533 F.2d 838, 849 (3d Cir. 1976)).

**Discussion**

On June 19, 2009, Judge Joy Flowers Conti authorized the interception of wire (telephone) communications of Curran and others, including individuals unknown at the time, occurring on cellular telephone number (724) 708-8235. Between July 14, 2009, and October 16, 2009, Judge Conti approved eight (8) additional applications based on followup Applications / Affidavits for the continued interception of wire communications of Curran and others. Pursuant to the Court's Orders, the DEA intercepted numerous telephone calls to and from Curran. Several of the intercepted telephone calls appear to involve the receipt of drugs by Curran from his suppliers, the redistribution of those drugs by Curran and his associates, and the collection of money by Curran for previously supplied drugs.

In authorizing the first interception, Judge Conti relied, in substantial, part, on the 52-page, sworn affidavit of Detective Eric Harpster of the City of Pittsburgh Police Department, Weed and Seed Division, who is a federally deputized task force officer of the DEA. The subsequent applications were each supported by the affidavit of Dominic J. Falascino, Task Force Officer for the DEA - Pittsburgh Office. As explained in the applications, the investigation involved an ongoing, wide-ranging narcotics conspiracy. Defendant Curran and his associates used certain telephones to discuss and complete drug transactions.

The initial application detailed the long-term and ongoing drug distribution activities of Defendant Curran and his associates; the recent interaction between Defendant Curran and members of the Bosnian drug trafficking organization that was supplying him with cocaine; contemporaneous intercepted communications between members of the Bosnian organization concerning their customers, including Defendant Curran; and a list of contacts between Defendant Curran's telephone, the members of the Bosnian organization, and Defendant

Curran's other associates. The successive applications built upon this information by including the recently obtained results of the electronic surveillance that had already occurred.

The initial Affidavit of Detective Harpster contains seven subject matter headings, including a section entitled "Necessity." The Necessity Section is comprised of nine sub-parts and spans fifteen pages. The Necessity Section explains in detail why interception of wire communications over the telephone is

> necessary to achieve the goal of the investigation in a timely, effective, and safe manner. The goal of the investigation is not just to obtain some evidence against some of the members of the organization led by CURRAN and LUCERNE. To the contrary, as noted above, the goal of the investigation is to identify each of CURRAN'S and LUCERNE'S conspirators, to determine the precise manner in which their vertically integrated criminal organization operates, and to dismantle the criminal organization through successful arrests and prosecutions of CURRAN, LUCERNE, their sources of supply, their distributors, and any other conspirators who assist the criminal organization. The goal can only be achieved through the acquisition of sufficient credible evidence to prove beyond a reasonable doubt that CURRAN, LUCERNE, and their conspirators have committed the Specified Federal Offenses.

Aff. at 36-37.

The Affidavit further explains that the wiretap (unlike other investigative techniques, including those that had been tried and failed and those that had not been tried due to their low likelihood of success) would uniquely assist law enforcement to detect the full scope, nature, and capabilities of the criminal activity for the following reasons:

(i) although telephone toll and pen register information had identified frequent telephone contact between target telephones, "the pen registers do not record the identity of the parties to the conversations, cannot identify the nature or substance of the conversations, and cannot

differentiate between legitimate calls and calls for criminal purposes [and] toll information has the same limitations as pen registers as well as additional limitations," Aff. at 38;

(ii) physical surveillance of the targets had been attempted on numerous occasions but proven of limited value "because of CURRAN'S evasive driving and awareness of surveillance," Aff. at 41;

(iii) serious limitations of physical surveillance were also noted because not all members and contributors to this drug organization resided in Pittsburgh and even those that did reside in Pittsburgh, including Curran, frequently travelled interstate; Aff. at 40-43;

(iv) the agents were currently attempting to install a pole camera at Curran's current residence, but such investigative step was not likely to reveal the inner workings of the organization and would require context to prove meaningful, Aff. at 41;

(v) "ping" surveillance was not likely to successfully accomplish the goal of the investigation because it "cannot provide information about what is being discussed by the subjects when they are observed," Aff. at 43;

(vi) subpoenaing witnesses to the grand jury would not achieve the goal as "persons with personal knowledge. . . would most likely be uncooperative and would likely invoke their Fifth Amendment privilege not to testify, " Aff. at 44;

(vii) confidential sources did not presently have the ability to purchase cocaine from the targets, Aff. at 45;

(viii) an infiltration of the conspiracy by an undercover agent "would be unsuccessful" due to the longstanding relationships of the members of the conspirators, Aff. at 45-46;

(ix) attempts to interview conspirators will cause the targets of the investigation to become "more circumspect in their dealings, thereby making detection of their criminal

activities, and the consequent gathering of additional leads and evidence, extremely difficult or impossible," Aff. at 47;

(x) searches of the Curran's trash had not produced valuable evidence as it appears that Curran "is very cautious regarding the contents of his trash," Aff. at 47; and

(xi) the acquisition and analysis of financial records of the targets has led to the conclusion that the targets have acquired and expended thousands of dollars, but has not revealed how the targets acquired such wealth, Aff. at 48.

The Court finds that the averments in the Affidavit of Detective Harpster provide substantial basis for the conclusion that the government satisfied the requirements of 18 U.S.C. § 2518(3)(c). First, the investigative techniques employed before interception "failed to determine the scope of the conspiracy and to identify the participants," *United States v. Armocida*, 515 F.2d 29, 38 (3d Cir. 1975). Specifically, the affidavit explains that the use of the wiretap was the only means available to law enforcement to learn the identity of the conspirators and the full scope of the conspiracy.

Next, the utility of confidential informants was limited. *United States v. Vento*, 533 F.2d 838, 850 (3d Cir. 1976). According to the Affidavit, the confidential informants were not able to make controlled purchases from any of the targets. Curran and the other targets, like the defendants in *Williams*, were "highly suspicious of unfamiliar persons," thus making use of a confidential informant or an undercover law enforcement official impractical. *See Williams*, 124 F.3d at 419.

Third, here, as in *Armocida, Vento, and Williams*, the need for electronic surveillance was a demonstrated necessity based on the ineffectiveness of physical surveillance. *See Armocida*, 515 F.2d at 38; *Vento*, 533 F.2d at 850; and *Williams*, 124 F.3d at 419. The affidavit makes clear

that effective physical surveillance was impossible due to Curran's counter surveillance techniques.

The Court finds that the Affidavit of Detective Harpster sets forth, among other things, (i) the inability of a confidential informant to gather additional information, (ii) Defendant Curran's use of evasive tactics, and (iii) the difficulty in penetrating Defendant's circle of alleged drug-trafficking confederates. For these reasons, the Court finds that the Affidavit of Detective Harpster provided a substantial basis to conclude that the target telephone was, and would continue to be, used to commit criminal activity.

The subsequent eight affidavits were submitted by Dominic J. Falascino, Task Force Officer for the DEA -Pittsburgh Office. The necessity statements in the successive applications built upon, and included, the necessity statements in the prior applications. Each successive application not only identified other investigative techniques and then assessed the strengths and weaknesses of each, but also discussed those strengths and weaknesses in the context of the particular investigation.

The Court finds and rules that each of Judge Conti's Orders contained the requisite finding regarding the limitations on use of alternative investigative techniques. Upon review of the Affidavits of Detective Harpster and Officer Falascino, the Court concludes that they are not limited to vague generalizations as Defendants contend. To the contrary, as discussed *supra*, they contain specific averments regarding the effectiveness and limitations of traditional investigative techniques during this investigation. Each of the Affidavits submitted in support of requests for extensions of time of the wiretaps contained a similarly comprehensive discussion of alternative investigative techniques. In sum, the Court has no difficulty in concluding that the wiretap Applications / Affidavits and Court Orders complied with the statutory requirements.

As an alternative to, or an extension of, his argument that the applications / affidavits themselves lacked necessity for a wiretap, Curran argues that ten (10) false statements were made in the initial affidavit of probable cause and that the application would have failed to establish probable cause in the absence of the allegedly false statements. The government filed a lengthy rebuttal in which it specifically addresses each of the ten challenged statements and argues that Curran's claims are "wildly lacking in merit, factually and legally." Resp. at 60.

In order to be entitled to a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), commonly referred to as a *Franks* hearing, a defendant must make a dual showing. First, the defendant must "make[] a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit . . . ." *Id.* at 155-56. Second, the offending information must be "necessary to the finding of probable cause," if the offending information is excluded and probable cause still remains, a *Franks* hearing is not required. *Id*. at 156.[1] *See also United States v. Frost*, 999 F.2d 737, 743 (3d Cir. 1993) (reiterating the *Franks* test as a two-part test which requires the defendant to "show both bad faith or reckless disregard existed on the part of the affiant, and that there would have been no probable cause but for the incorrect statement.").

As to the first prong of the *Franks* standard, the substantial showing that a false statement was included by the affiant, the United States Court of Appeals for the Third Circuit has elaborated as follows:

> Affidavits filed in support of a search warrant are presumptively
> valid, and a proponent of a *Franks* hearing must make a substantial

---

[1] Although the United States Court of Appeals for the Third Circuit has not decided the issue, most appellate courts have held that *Franks* hearings are also appropriate when a defendant is challenging whether there are false statements or omissions in an affidavit for a wiretap application that speak to the necessity requirement. *United States v. Heilman,* 377 Fed. Appx. 157 (3d Cir. 2010) (non-precedential opinion).

9

> preliminary showing to prevent the misuse of such hearings for
> purposes of discovery or obstruction. *Franks*, 438 U.S. at 170-71.
> Specifically, "[t]here must be allegations of deliberate falsehood or
> of reckless disregard for the truth ... accompanied by an offer of
> proof." *Id*. at 171.

*United States v. Marranca*, 98 Fed. Appx. 179 (3d Cir. 2004) (non-precedential opinion).

Defendants have not submitted declarations or other proof to contradict the information in the Affidavit or made any offer of proof. In his motion to suppress, Curran does not specifically request a *Franks* hearing, although he does cite to *Franks*. Generously construing this citation to *Franks* as requesting a *Franks* hearing does not relieve Defendant of his burden to make the required substantial preliminary showing that Detective Harpster, knowingly and intentionally or with reckless disregard, included false information in his Affidavit.

Upon careful consideration of the challenged ten (10) statements, together with a thorough assessment of the government's response, the Court finds that Curran has not made the requisite showing for a *Franks* hearing. For the reasons discussed, Defendants' motions to suppress the wiretap evidence (Document Nos. 488 and 362) will be **DENIED.**

An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) 2: 09-cr-00325 |
| v. | ) |
| | ) |
| DAVID CURRAN, BRADLEY BARNDT, | ) |
| and FRANCO BADINI | ) |

## ORDER OF COURT

**AND NOW,** this 27th day of May, 2011, in accordance with the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED AND DECREED that the Motion to Suppress Wiretap and Electronic Interceptions filed by Defendant David Curran (Document No. 488) and the MOTION TO SUPPRESS RECORDS OF ELECTRONIC SURVEILLANCE filed by Defendant Bradley Barndt (Document No. 362) are **DENIED.**

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: Craig W. Haller,
Assistant U.S. Attorney
Email: craig.haller@usdoj.gov

Warner Mariani, Esquire
Email: marianilaw@mac.com

Stephen Israel, Esquire
Israel & Specter
Email: ispeclaw@fyi.net

Lee M. Rothman, Esquire
Email: DifenderferRothmanHaber@yahoo.com