## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | 2:09-cr-00325-5 |
| | ) | |
| BRADLEY BARNDT, | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION

**Mark R. Hornak, Chief United States District Judge**

Before the Court is Defendant Bradley Barndt's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF Nos. 1105, 1109, 1111, 1145) ("Motion").[1] Mr. Barndt is currently serving a term of imprisonment of 240 months followed by a ten-year term of supervised release after being convicted in 2011 for conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 846. (ECF Nos. 834, 856.)

Based on the record before the Court, the Court concludes that Mr. Barndt has not demonstrated extraordinary and compelling reasons for this Court to reduce his sentence. Thus, the Court DENIES Mr. Barndt's Motion to Reduce Sentence (ECF Nos. 1105, 1109, 1111, 1145) without prejudice to its reassertion should circumstances warrant.

### I.   BACKGROUND

In August 2011, a jury convicted Mr. Barndt of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 846. (ECF No. 834, at 1–2.) Mr. Barndt had previously been convicted of intent to deliver a controlled substance

---

[1] As explained below, Mr. Barndt's Motion consists of several filings, some *pro se* and some counseled. In this Opinion, the Court refers to the filings at ECF Nos. 1105, 1109, 1111, and 1145 collectively as the "Motion" at issue here, and most citations refer to the counseled Motion at ECF No. 1145.

in violation of Pennsylvania law, and the Government filed an Information Pursuant to 21 U.S.C. § 851 in the instant case to establish that prior conviction for sentencing purposes. (ECF No. 673, at 1.) Based on that prior conviction and the terms of 21 U.S.C. § 841(b)(1)(A) as it was written when Mr. Barndt was sentenced, Mr. Barndt's sentence included a mandatory minimum term of imprisonment of 20 years, or 240 months. (ECF Nos. 856; 1145, at 1–2.) *See* First Step Act of 2018, Pub. L. No. 115-391, § 401, 132 Stat. 5194, 5220 (2018) (showing the prior version of 21 U.S.C. § 841(b)(1)(A) that applied when Mr. Barndt was sentenced and that the First Step Act of 2018 amended).

On November 21, 2019, Mr. Barndt filed a *pro se* memorandum of law requesting relief pursuant to the First Step Act and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 1105), which the Court referred to the Federal Public Defender's Office for appropriate review (ECF No. 1106). In May 2020, Mr. Barndt filed another request for a reduced sentence (ECF No. 1109), and, upon hearing from the Federal Public Defender's Office that it would not represent him as to this matter, he also filed a Motion for Appointed Counsel (ECF No. 1110). He renewed his request for relief pursuant to § 3582(c)(1)(A) and for appointment of counsel in August 2020. (ECF No. 1111, at 1.) On August 13, 2020, this Court appointed counsel for Mr. Barndt (ECF No. 1112, at 1), and a counseled Motion to Reduce Sentence (ECF No. 1145) was filed on January 29, 2021 requesting that this Court reduce Mr. Barndt's term of incarceration from 20 years to 15 years (*id.* at 2). The Government's Response (ECF No. 1156) followed on February 8, 2021.

On March 4, 2021, after seeking and reviewing input from the parties, the Court stayed Mr. Barndt's Motion pending the Third Circuit's decision in *United States v. Andrews*, which was expected to address "the scope of a court's discretion to determine and define 'extraordinary and compelling circumstances' . . . when such are asserted to exist due to the magnitude or duration of

2

an imposed sentence of imprisonment," a key issue that Mr. Barndt's Motion raised. (ECF No. 1161; *see* ECF Nos. 1165, 1169.) After *Andrews* was decided, the Court sought statements of position from the parties on the impact of *Andrews* on Mr. Barndt's Motion. (ECF No. 1172), and those statements were filed thereafter (ECF Nos. 1174, 1189). The matter is now ripe for decision.

## II.   LEGAL STANDARD

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007); *Dillon v. United States*, 560 U.S. 817, 819 (2010) (citing 18 U.S.C. § 3582(c)). One such specific authorization is the First Step Act's amendment of 18 U.S.C. § 3582. As amended, that statute allows a court to reduce a defendant's term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." § 3582(c)(1)(A)(i). In addition, the court must consider: (1) whether the defendant has exhausted the appropriate administrative remedies; (2) the factors set forth in 18 U.S.C. § 3553(a) to the extent that they apply; and (3) whether such a reduction is consistent with applicable U.S. Sentencing Commission policy statements. § 3582(c)(1)(A).

## III.   DISCUSSION

After analyzing the record, the Court concludes that Mr. Barndt has administratively exhausted his request to the BOP for a sentence reduction with respect to two of the three grounds for a reduced sentence that he raises in his Motion, but he has not exhausted the request as to one ground in his Motion. Regardless of whether he has fully exhausted his request, however, the Court concludes that Mr. Barndt has not demonstrated extraordinary and compelling reasons for this Court to reduce his sentence. The Court therefore does not consider whether a sentence reduction

would be consistent with the § 3553(a) sentencing factors given the absence of extraordinary and compelling reasons from the record.

A. **Administrative Exhaustion**

The Court first considers whether Mr. Barndt has complied with § 3582(c)(1)(A)'s exhaustion requirement. Prior to petitioning a court for relief under § 3582(c)(1)(A), a defendant must file an administrative request for release or a sentence reduction with the warden of the facility where the defendant is incarcerated; the defendant must then either (1) "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or (2) wait 30 days from the date on which the defendant filed an administrative request with the warden. § 3582(c)(1)(A). Either option for administrative exhaustion under § 3582(c)(1)(A), standing alone, is sufficient to satisfy the exhaustion requirement. *See United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020). Administrative exhaustion is mandatory, and a court may not modify a sentence under § 3582(c)(1)(A) if exhaustion has not occurred, regardless of whether the Government contests the defendant's asserted exhaustion. *United States v. Davidson*, No. 16-139-2, 2020 WL 4877255, at *5 & n.4 (W.D. Pa. Aug. 20, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).

In *United States v. Davidson*, this Court analyzed the requirements under § 3582(c)(1)(A) as to the content of a defendant's administrative request to the BOP compared to the content of the defendant's motion to a court and the resulting scope of a court's review of the motion, including "whether a defendant must specifically mention . . . in a BOP administrative request for compassionate release" each issue the defendant raises with the court before the court can consider those issues. *See id.* at *7–13. The situation before the Court in *Davidson*, and the cases that the Court reviewed in its analysis there, involved a defendant seeking compassionate release in a

4

request to the BOP based on one or more of the defendant's medical conditions and, in the motion to the court, relying upon those same medical conditions while also asserting for the first time that the COVID-19 pandemic constituted an extraordinary and compelling reason for compassionate release. *See id.* at *2–4, 8–13. This Court rejected the "'mirror image' approach" that some courts had taken to such motions that allows a court to "only consider the *exact information* that the defendant put before the BOP via their administrative request"; instead, the Court "agree[d] with the reasoning of [another] line of cases" that had concluded that a reference to COVID-19 made for the first time in the motion to the court "serves to supplement [] core concerns" related to medical issues and "is not an attempt to bring an entirely new request for compassionate release." *Id.* at *8, 14. As long as the record before a court demonstrates that "the BOP [had] the first opportunity to consider" the primary grounds upon which a defendant relies in a compassionate release or sentence reduction motion to the court and that "such consideration in fact occurred by and within the BOP, the purposes of exhaustion have been fulfilled." *Id.* at *13.[2]

The record here shows that on November 6, 2019, Mr. Barndt submitted a request to a BOP staff member at FCI Raybrook asking the BOP "to file a motion to reduce [his] sentence based upon extraordinary and compelling reasons." (ECF Nos. 1145, at 6; 1145-1, at 1.) The staff member responded that day, stating "[u]nfortunately at this time you do not meet the qualification

---

[2] The requirement that "such consideration in fact occurred" necessarily would not apply in a case in which a defendant does not receive a response from the BOP to the defendant's administrative request before the defendant files a motion in the court and instead exhausts by waiting 30 days after filing the administrative request. *See* § 3582(c)(1)(A); *Harris*, 973 F.3d at 171. Nor would it apply in a case in which a defendant receives a pre-motion response from the BOP that does not address the merits of the defendant's request and the defendant exhausts by waiting 30 days after filing the BOP request or by completing the process of appealing the BOP's failure to move for compassionate release on the defendant's behalf. *See* § 3582(c)(1)(A); *Harris*, 973 F.3d at 171. In other words, in at least some contexts other than the one the Court confronted in *Davidson*, administrative exhaustion merely requires the BOP to have had the first opportunity to consider the grounds upon which the defendant's compassionate release motion rests. In all cases, *Raia* stands for the proposition that the BOP's opportunity to consider matters that could be considered "extraordinary and compelling" circumstances is the paramount purpose of administrative exhaustion. *See* 954 F.3d at 597.

[for] compassionate release." (ECF No. 1145-1, at 1.) Based on the timing of Mr. Barndt's Motion to this Court, Mr. Barndt asserts that he has "satisfied the gate-keeping provision as 30 days have passed since the BOP received his request and BOP's failure to bring a motion on his behalf." (ECF No. 1145, at 6.) The Government agrees with Mr. Barndt and states that Mr. Barndt has exhausted since 30 days had passed at least before Mr. Barndt's counseled Motion was filed. (*See* ECF No. 1156, at 4.) Thus, both Mr. Barndt and the Government focus on the timing and procedural requirements for administrative exhaustion but do not discuss the content requirements.

Upon the Court's independent consideration of whether administrative exhaustion has occurred, which it must perform despite the parties' agreement that Mr. Barndt has exhausted, the Court concludes that Mr. Barndt has met the administrative exhaustion requirement procedurally, and substantively except as to the COVID-19 issue that he raises before this Court.

First, as to timing and procedure, while Mr. Barndt's first *pro se* filing in which he sought compassionate release or a sentence reduction from this Court was filed on November 21, 2019— 15 days after his request to the BOP (ECF No. 1105)—his  next two *pro se* filings and counseled filings seeking compassionate release or a sentence reduction all occurred beyond the 30-day period required for exhaustion to occur. (*See* ECF Nos. 1109, 1111, 1145.) Thus, based on the timing of Mr. Barndt's requests for relief to the BOP and this Court, the Court is permitted to grant Mr. Barndt relief if warranted. *See* § 3582(c)(1)(A).

Second, the Court concludes that Mr. Barndt has administratively exhausted his request as the specific grounds he asserts in his Motion—with the exception of his assertion that the COVID-19 pandemic in and of itself warrants his sentence reduction—because the response Mr. Barndt received demonstrates that the BOP had the opportunity to consider, and should be treated as having considered, those grounds. Unlike *Davidson*, where the defendant had identified in his BOP

request some of the specific reasons that he asserted were "extraordinary and compelling" such that he was eligible for compassionate release, 2020 WL 4877255, at *2–4, here, Mr. Barndt referred only to "extraordinary and compelling reasons" generally and not to any of the specific reasons he puts forth in his Motion. (*See* ECF No. 1145-1, at 1.) However, the BOP's response to Mr. Barndt indicates that the BOP considered whether Mr. Barndt was "qualified" for compassionate release and determined that he was not. (*See id.*) The BOP is well aware that a defendant may be eligible for compassionate release in multiple ways, and an affirmative statement to Mr. Barndt that he "do[es] not meet the qualification [for] compassionate release," absent language that limits that statement in any way, is in the Court's estimation a disposition by the BOP "on the merits" of all grounds upon which the BOP would have been authorized to act at the time. In fact, some of the types of reasons that Mr. Barndt has claimed are extraordinary and compelling reasons for the Court to reduce his sentence are ones that the BOP is quite familiar with based on the BOP's role both before and after the First Step Act's passage in reviewing inmate requests for release based on medical-related concerns (whether COVID-19 or others) and good behavior in prison. *See, e.g.*, Program Statement No. 5050.50: Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g), Fed. Bureau Prisons 10 (Jan. 17, 2019), https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

Thus, while the facts and record here differ from those in *Davidson*, the reasoning in *Davidson* as to the purpose of the administrative exhaustion requirement supports the conclusion that Mr. Barndt's Motion here, although not a precise mirror image of his request to the BOP, gave the BOP the first opportunity—which the BOP took—to review on the merits whether Mr. Barndt should be released or receive a modified sentence based on any then-available grounds for such a

release or modification, and it denied that relief based on an unqualified determination that Mr.

Barndt was ineligible. *See* 2020 WL 4877255, at *13.

As to the COVID-19 issue that Mr. Barndt raises in his Motion, however, the Court cannot

conclude that Mr. Barndt substantively exhausted this ground in his request to the BOP because

the BOP received, reviewed, and denied Mr. Barndt's request before the COVID-19 pandemic

emerged.[3] However, as explained below, Mr. Barndt's argument that COVID-19 in and of itself

constitutes an extraordinary and compelling reason for his sentence reduction is legally insufficient

under Third Circuit precedent, *see Raia*, 954 F.3d at 597; accordingly, the Court concludes that

Mr. Barndt's lack of administrative exhaustion of his COVID-19-based claim is immaterial to the

Court's ultimate conclusion as to his Motion.

For these reasons, the Court concludes that Mr. Barndt has largely administratively

exhausted his request to the BOP as required by § 3582(c)(1)(A) and that to the extent he has not,

the lack of administrative exhaustion as to his COVID-19 ground is immaterial to the Court's

disposition of Mr. Barndt's Motion.

---

[3] The facts here are distinguishable from those in *United States v. Smith*, 464 F. Supp. 3d 1009, 1017 (N.D. Iowa 2020), which this Court discussed approvingly in *Davidson*, 2020 WL 4877255, at *14. In *Smith*, while the BOP had denied the defendant's request before the COVID-19 pandemic emerged, the court concluded that the defendant's argument in his motion to the court that COVID-19 contributed to the extraordinary and compelling reasons for his release was not a wholly new argument than those raised in the BOP request because the BOP request and the motion were primarily based on the defendant's concerns about his preexisting medical conditions. *See Smith*, 464 F. Supp. 3d at 1017; *Davidson*, 2020 WL 4877255, at *12, 14. This Court explained in *Davidson* that in such a scenario, inclusion of COVID-19-related concerns in a motion for compassionate release that has an asserted medical condition of the defendant "at the [motion's] core" "simply highlights the ways in which the COVID-19 pandemic has compounded the severity of [the defendant's] pre-existing . . . conditions." 2020 WL 4877255, at *14. Here, Mr. Barndt asserts in his Motion that the mere existence of the COVID-19 pandemic, unrelated to any individual threat that the pandemic poses to him, is extraordinary and compelling. The lack of an opportunity for the BOP to consider this type of argument before a court considers it in a compassionate release argument is significant because such an argument is not part and parcel with a claim that a medical condition warrants the defendant's sentence modification, but rather is an entirely separate argument.

### B. **"Extraordinary and Compelling Reasons"**

Next, the Court must determine whether any of Mr. Barndt's asserted reasons for a sentence reduction—(1) "the change in the law that would no longer subject him to a 20-year mandatory minimum," (2) "the ongoing COVID-19 pandemic," or (3) "his rehabilitation efforts since being sentenced in 2012"—are extraordinary and compelling such that a sentence reduction may be warranted. (ECF No. 1145, at 2.)

Section 3582 does not define the phrase "extraordinary and compelling reasons." *See* § 3582(c)(1)(A)(i). Instead, Congress delegated that task to the U.S. Sentencing Commission. *See* 28 U.S.C. § 994(t) (stating that the Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"). The Sentencing Commission defined "extraordinary and compelling reasons" under the pre-First Step Act version of § 3582(c)(1)(A)(i) in a policy statement contained in § 1B1.13 of the U.S. Sentencing Guidelines Manual, relating to the BOP's discretion to reduce a prisoner's term of imprisonment. However, the Sentencing Commission has not issued an updated policy statement since the First Step Act became law. *See United States v. Rodriguez*, 451 F. Supp. 3d 392, 396 (E.D. Pa. 2020).

In *United States v. Andrews*, the Third Circuit explained that given the lack of an updated applicable Sentencing Commission policy statement defining "extraordinary and compelling reasons," "the existing policy statement is not applicable—and not binding—for courts considering prisoner-initiated motions" for compassionate release. 12 F.4th 255, 259 (3d Cir. 2021). However, "although the policy statement is no longer binding, it still sheds light on the meaning of extraordinary and compelling reasons." *Id.* at 260. This is because "Congress legislates against the backdrop of existing law," and thus, by "reenact[ing] the compassionate-release statute

9

without any alterations to the phrase 'extraordinary and compelling reasons,'" Congress likely intended the phrase to retain the meaning that the Sentencing Commission gave it in its pre-First Step Act policy statement. *Id.* Therefore, in reviewing this Motion, this Court does not treat U.S.S.G. § 1B1.13 and the accompanying application notes as "an ultimate binding authority," but the Court nonetheless considers them as a guide in its analysis. *Id.*

While "district courts [have] 'considerable discretion' . . . in compassionate release cases," that discretion is not without limits. *United States v. Gordon*, No. 99-348-2, 2022 WL 377395, at *6 (E.D. Pa. Feb. 7, 2022) (citing *Andrews*, 12 F.4th at 262). Two limits are particularly relevant for resolving Mr. Barndt's Motion. First, while the Third Circuit in *Andrews* confirmed that district courts are not limited by U.S.S.G. § 1B1.13's list of extraordinary and compelling reasons for compassionate release or sentence reduction, the *Andrews* court also identified two factors that cannot be extraordinary and compelling: "[t]he duration of a lawfully imposed sentence" and "nonretroactive changes to . . . mandatory minimum[]" sentences that applied at the time of a defendant's sentencing. 12 F.4th at 260–62. Second, courts are bound by 28 U.S.C. § 994(t), which provides that in any policy statement that the Sentencing Commission may promulgate regarding 18 U.S.C. § 3582(c)(1)(A), or in a court's own application of § 3582(c)(1)(A), "rehabilitation of the defendant *alone* shall not be considered an extraordinary and compelling reason." *See* 28 U.S.C. § 994(t) (emphasis added).[4]

---

[4] As some district courts have observed, "[f]or the word 'alone' [in § 994(t)] to do any work—as it must—that means courts can consider rehabilitation as part of a compassionate release motion." *See, e.g.*, *United States v. Brown*, 457 F. Supp. 3d 691, 701 (S.D. Iowa 2020). This suggests that courts may grant compassionate release or reduce a defendant's sentence based on rehabilitation when it is combined and considered with other factors that courts are permitted to conclude may rise to the level of extraordinary and compelling; however, rehabilitation combined with factors that are by law not extraordinary and compelling cannot form the basis for granting such motions because "grant[ing] compassionate release based [in whole or in part] on a reason that has been specifically forbidden" is impermissible, *Gordon*, 2022 WL 377395, at *6.

With these principles in mind, the Court turns to Mr. Barndt's asserted extraordinary and compelling reasons for a sentence reduction.

**1.   Change to Sentencing Provisions of 21 U.S.C. § 841(b)(1)(A)**

Mr. Barndt's "primary . . . impetus" for his compassionate release Motion is "the vastly different mandatory minimum he would face if he were sentenced today compared to when he was originally sentenced." (ECF No. 1145, at 8 (quoting *United States v. Pollard*, No. 10-633-1, 2020 WL 4674126, at *6 (E.D. Pa. Aug. 12, 2020)).

In January 2012, when Mr. Barndt was sentenced, the mandatory minimum sentence for someone who violated 21 U.S.C. § 841(b)(1)(A), and who had a prior conviction for a "felony drug offense" that had become final, was 20 years; the First Step Act of 2018 amended those provisions such that the enhanced penalty of 20 years was reduced to 15 years and only applied if the prior conviction was for a "serious drug felony or serious violent felony." (*See* ECF No. 1145, at 8–9.) First Step Act of 2018, Pub. L. No. 115-391, § 401, 132 Stat. 5194, 5220 (2018); *see* 21 U.S.C. § 841(b)(1)(A); *United States v. Stitt*, No. 03-259, 2021 WL 826744, at *2 (W.D. Pa. Mar. 4, 2021).

Mr. Barndt asserts that if he had been sentenced today under the present statutory provisions, he would have been sentenced to a minimum enhanced sentence of 15 years based on his prior conviction, instead of a sentence of at least 20 years that was mandatory when he was sentenced in 2012. (*See* ECF No. 1145, at 8–9.)[5] Relying upon an out-of-circuit case, Mr. Barndt argues that "the unfairness of keeping a man in prison for years more than if he had committed the

---

[5] Mr. Barndt does not appear to dispute that the prior conviction that served as the basis for his enhanced sentence for his conviction in the instant case would today be characterized as a "serious drug felony or serious violent felony," as § 841(b)(1)(A) now requires, such that the enhanced sentence would still apply.

same crime today" is extraordinary and compelling. (ECF No. 1145, at 9 (citing *United States v. Ledezma-Rodriguez*, No. 00-71, 2020 WL 3971517, at *2 (S.D. Iowa July 14, 2020)).) The Government distinguishes *Ledezma-Rodriguez* on its facts and urges the Court to follow cases that have concluded that sentencing disparities based on amended laws that do not apply the amendments retroactively are not extraordinary and compelling. (ECF No. 1156, at 5–7.)

After *Andrews* was issued during the pendency of Mr. Barndt's counseled Motion and the Government Response, there is no uncertainty in this Circuit on this point. The Third Circuit plainly rejected Mr. Barndt's argument, concluding instead that the "ordinary practice" of "apply[ing] new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced," "cannot also be an 'extraordinary and compelling reason' to deviate from that practice." 12 F.4th at 261.

In his Statement of Position addressing *Andrews*'s impact on Mr. Barndt's Motion, Mr. Barndt argues that the Fourth Circuit's decision in *United States v. McCoy*, which diverges from *Andrews* in concluding that nonretroactive changes to sentencing law can create extraordinary and compelling circumstances warranting compassionate release, "is the better analysis." (ECF No. 1189, at 4 (citing 981 F.3d 271, 286 (4th Cir. 2020)).) He also emphasizes *Andrews*'s holding that district courts have discretion to resolve compassionate release motions outside of the confines of the Sentencing Commission's nonbinding policy statements and argues that "this [C]ourt may exercise [that] discretion [to] determin[e] that Mr. Barndt's 20-year sentence is an extraordinary and compelling reason to grant his motion," especially because unlike the defendant in *Andrews*, Mr. Barndt would soon be released if his sentence was reduced. (*Id.* at 2.) But asserting that *McCoy* is better reasoned is misses the mark because the decisions of the Third Circuit, and not those of the Fourth Circuit, bind this Court; and emphasizing *Andrews*'s recognition of this Court's

12

discretion in resolving Mr. Barndt's Motion ignores the fact that *Andrews* also expressly limits that discretion and disallows compassionate release or sentence reduction for the sentencing-based reason that Mr. Barndt provides.

Thus, this Court concludes that changes to the sentencing provisions of 21 U.S.C. § 841(b)(1)(A) following Mr. Barndt's 2012 sentencing do not constitute an extraordinary and compelling reason for his compassionate release or sentence reduction.

### 2. **The COVID-19 Pandemic**

Mr. Barndt argues at length that "[f]or individuals who are incarcerated . . . , the COVID-19 pandemic presents an 'extraordinary and unprecedented threat.'" (ECF No. 1145, at 11 (citing *United States v. Scparta*, No. 18-578, 2020 WL 1910481, at *9 (S.D.N.Y. Apr. 20, 2020)).) He concedes that he "is generally healthy" but states that "there have been instances where relatively young, healthy people have severe or fatal outcomes when infected with the COVID-19 virus." (*Id.* at 15.) The Government argues in its Response that COVID-19 is not an extraordinary and compelling reason for this Court to grant Mr. Barndt's Motion because Mr. Barndt has not shown that he is at a particularly high risk of adverse health outcomes during the pandemic based on, for example, a preexisting serious medical condition. (ECF No. 1156, at 9–10 (citing *Raia*, 954 F.3d at 597).)

As with Mr. Barndt's sentencing-based argument, his COVID-19-based argument fails because of precedent in this Circuit. The Third Circuit has held that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *Raia*, 954 F.3d at 597. The record indicates that Mr. Barndt is no more at risk of contracting COVID-19 and experiencing serious illness or death from the infection

13

than is any other inmate at FCI Raybrook. Thus, based on the precedential decision in *Raia*, there is nothing extraordinary and compelling about Mr. Barndt's possible exposure to COVID-19 that would allow this Court to conclude that compassionate release or sentence reduction is warranted.

    **3.**  **Rehabilitation**

While recognizing that rehabilitation alone is not extraordinary and compelling under § 3582(c)(1)(A)(i), Mr. Barndt argues that the Court can, and should, consider it "with other equitable factors" to determine whether extraordinary and compelling circumstances warrant the relief he seeks. (ECF No. 1145, at 9–10 (*citing United States v. Millan*, No. 91-685, 2020 WL 1674058, at *7 (S.D.N.Y. Apr. 6, 2020)).) Mr. Barndt asserts that he "has made maximum use of his time during incarceration and the opportunities offered by the BOP" to overcome his drug addiction and gain skills to become a supportive member of his community and his family, citing BOP records showing only one disciplinary issue since 2012 and a long list of educational courses that he has taken while incarcerated, as well as letters in support of his release from prison from BOP staff and others. (ECF Nos. 1145, at 10; 1145-4, at 1; 1145-5, at 1–2; *see, e.g.*, ECF No. 1148 (letter from an FCI Raybrook correctional officer who states that "[i]n [his] professional opinion, Bradley Barndt has programmed and rehabilitated himself to be a productive and contributing member of society").) The Government does not dispute that Mr. Barndt demonstrates that he has made some successful rehabilitation efforts but argues that Mr. Barndt's other asserted reasons for release are not extraordinary and compelling and that granting Mr. Barndt's Motion based on rehabilitation alone is impermissible. (*See* ECF No. 1156, at 7–9.)

The Court agrees with the Government. Even if the Court were to conclude that Mr. Barndt's commendable efforts at rehabilitation were extraordinary and compelling, "rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for granting

his Motion, 28 U.S.C. § 994(t), and the other circumstances that Mr. Barndt argues in his Motion justify his sentence reduction fall far short of being extraordinary and compelling. Thus, the record demonstrates no individual factor or combination of factors that would warrant concluding that extraordinary and compelling reasons to grant Mr. Barndt's Motion currently exist.

## IV.   <u>CONCLUSION</u>

Having carefully considered the parties' briefing on Mr. Barndt's Motion to Reduce Sentence and concluded that the record lacks a showing of extraordinary and compelling reasons to grant it, the Court DENIES Mr. Barndt's Motion to Reduce Sentence without prejudice.

An appropriate Order will issue.


s/ Mark R. Hornak
Mark R. Hornak
Chief United States District Judge


Dated:          May 12, 2022
cc:             All counsel of record